**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| TRINITY A. MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 4:26-cv-00054-RSB-CLR |
| | ) | JURY TRIAL DEMANDED |
| ADT LLC d/b/a ADT SECURITY | ) | |
| SERVICES, and MATRIX ABSENCE | ) | |
| MANAGEMENT, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Trinity Moore ("Plaintiff" or "Ms. Moore"), by and through undersigned counsel, files this First Amended Complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), and against Defendants ADT LLC d/b/a ADT Security Services ("ADT") and Matrix Absence Management, Inc. ("Matrix") (collectively, "Defendants"), alleges as follows:

## I.      PARTIES

1.      Plaintiff Trinity Moore is a citizen of the State of Georgia, residing in Chatham County, Georgia. At all times relevant to this action, Ms. Moore was an "employee" within the meaning of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611(2), the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(e), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e(f), the Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. §

1

2000gg(3), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111(4), and 42 U.S.C. § 1981. Ms. Moore is an African American woman.

2.    Defendant ADT LLC d/b/a ADT Security Services is a Florida limited liability company with its principal place of business at 1501 Yamato Road, Boca Raton, Florida 33431. At all relevant times, ADT employed more than 500 employees and was an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4), the FLSA, 29 U.S.C. § 203(d), Title VII, 42 U.S.C. § 2000e(b), the PWFA, 42 U.S.C. § 2000gg(2)(B), and the ADA, 42 U.S.C. § 12111(5).

3.    Defendant Matrix Absence Management, Inc. ("Matrix"), a member of the Tokio Marine Group, served as the third-party claims administrator for ADT's Short-Term Disability ("STD") Plan, FMLA leave, and ADA accommodation requests. At all relevant times, Matrix acted as ADT's agent in administering leave, disability benefits, and accommodation determinations for ADT employees, including Plaintiff. Matrix made discretionary decisions regarding Plaintiff's eligibility for STD benefits, FMLA leave designations, and ADA accommodations. ADT's STD Policy expressly disclaims ERISA coverage, stating the plan is a "payroll practice" not subject to ERISA pursuant to 29 C.F.R. § 2510.3-1(b). Plaintiff accepts this characterization for pleading purposes only and reserves all rights to assert claims under ERISA in the alternative pursuant to Federal Rule of Civil Procedure 8(d)(2). To the extent the STD Plan is determined to be governed by ERISA despite ADT's disclaimer—whether under the functional analysis of *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982) (en banc), or otherwise—Matrix's exercise of discretionary authority over plan administration establishes fiduciary status based on functional control, and Plaintiff is entitled to relief under ERISA § 502(a)(1)(B) and § 502(a)(3).

2

## II.   JURISDICTION AND VENUE

4.   This Court has subject matter jurisdiction over Plaintiff's FMLA claims pursuant to 29 U.S.C. § 2617(a)(2) and 28 U.S.C. § 1331.

5.   This Court has subject matter jurisdiction over Plaintiff's claims under 42 U.S.C. § 1981 pursuant to 28 U.S.C. §§ 1331 and 1343.

6.   This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

7.   This Court has subject matter jurisdiction over Plaintiff's claims under Title VII pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331; over Plaintiff's claims under the PWFA pursuant to 42 U.S.C. § 2000gg-2(a) and 28 U.S.C. § 1331; and over Plaintiff's claims under the ADA pursuant to 42 U.S.C. § 12117(a) and 28 U.S.C. § 1331.

8.   This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9.   Venue is proper in the Southern District of Georgia pursuant to 28 U.S.C. § 1391(b) and, as to Plaintiff's Title VII, PWFA, and ADA claims, pursuant to 42 U.S.C. § 2000e-5(f)(3), because a substantial part of the events giving rise to the claims occurred in this District. Plaintiff resided, was employed, and performed work in Chatham County, Georgia throughout the relevant period.

10.   Plaintiff's FMLA and § 1981 claims require no administrative exhaustion. As to Plaintiff's claims under Title VII, the PWFA, and the ADA, all conditions precedent to suit have been satisfied. Plaintiff filed EEOC Charge No. 415-2026-00551 on December 23, 2025, alleging discrimination on the basis of race, sex (including pregnancy), and disability, and retaliation. On February 28, 2026, Plaintiff filed a second EEOC Charge, No. 415-2026-01409,

alleging that ADT's January 29, 2026 termination was retaliatory. On April 7, 2026, the U.S. Equal Employment Opportunity Commission issued Notices of Right to Sue on both charges. This First Amended Complaint is filed within 90 days of Plaintiff's receipt of those Notices.

## III.    FACTUAL ALLEGATIONS

### A.    Plaintiff's Employment

11.    On or about April 15, 2024, ADT hired Ms. Moore as a Customer Technician Support representative. Based on her strong performance, ADT promoted Ms. Moore to the position of Associate III Retention on the Advanced Care Team ("ACT"). She worked remotely from Savannah, Georgia.

12.    Ms. Moore's regular hourly rate was $21.00 per hour, working approximately 40 hours per week.

13.    Prior to disclosing her pregnancy, Ms. Moore's employment record was exemplary—she had earned a promotion and had not been subject to any disciplinary action.

### B.    Pregnancy Disclosure and Request for Accommodations

14.    In or about March 2025, Ms. Moore informed her supervisor, Philip Palomo, and ADT's Human Resources department that she was pregnant, with an expected due date of September 18, 2025.

15.    On or about April 9, 2025, Ms. Moore's healthcare provider, Cameron Bruce, APRN, at Memorial Health University Physicians submitted documentation requesting her work schedule be adjusted to daytime hours (8:00 AM to 5:00 PM).

16.    ADT offered an alternative schedule requiring weekend work, inconsistent with the medical recommendation. ADT refused any other modification.

17.    Following her pregnancy disclosure, Supervisor Palomo began closely scrutinizing Ms. Moore's breaks, bathroom usage, and attendance in a manner not applied to similarly situated non-pregnant employees and employees outside her protected class. On July 28, 2025, Supervisor Palomo created two separate corrective actions against Ms. Moore on the same day: a Verbal Warning for "Improper Reporting" coded as a behavior issue, and a Written Warning for "Exceeded Threshold" coded as an attendance issue. ADT's progressive discipline framework contemplates a single step at a time; the simultaneous issuance of both a Verbal Warning and a Written Warning for unrelated categories on the same day was a departure from that framework. Ms. Moore was not informed of the underlying basis for either action at the time of issuance and was not afforded a meaningful opportunity to respond before being required to sign off on July 30, 2025.

**C.    FMLA Leave and the August 21 Discipline**

18.    In May 2025, Ms. Moore's healthcare provider certified her need for intermittent FMLA leave of approximately one day per week for prenatal appointments. ADT approved this request.

19.    As her pregnancy progressed, she experienced increasing complications including severe daily nausea requiring medication. Her healthcare provider placed her on medical leave effective August 21, 2025.

20.    On August 11, 2025, Ms. Moore's STD claim was initiated with Matrix. Her last day worked was August 20, 2025.

21.    On August 13, 2025—eight days before Ms. Moore's pregnancy-related medical leave was scheduled to begin—Supervisor Palomo created a Final Written Warning corrective action against Ms. Moore in ADT's COPA disciplinary system, coded for "Attendance /

5

Exceeded Threshold." The Final Written Warning was the last step in ADT's progressive discipline framework before termination. Palomo did not present the Final Written Warning to Ms. Moore for signoff between August 13 and August 20, 2025—the period during which she was actively working.

22.     On August 21, 2025—the precise day Ms. Moore commenced pregnancy-related medical leave—Supervisor Palomo signed off on the Final Written Warning at 1:29:37 PM Central Time and, in the same minute, recorded that Ms. Moore had "Refused to Signoff." Ms. Moore did not refuse to sign; she was on protected medical leave and was not present to sign. Palomo's own contemporaneous refusal comment in the COPA system admits this, stating: "this was covered with the agent prior to LOA – but was not signed off prior to beginning the LOA." Palomo nonetheless proceeded to finalize the Final Written Warning and to record a fabricated employee "refusal" to sign during a period of protected absence.

23.     The attendance tracker incorporated into the Final Written Warning included entries dated August 26 through September 5, 2025, coded as "UNSCH1" at 480 minutes each—dates falling during Ms. Moore's approved medical leave, meaning ADT accumulated attendance points against Ms. Moore for FMLA-protected and pregnancy-related absences. The corrective action was initially intended as a verbal-level warning but was escalated to the Final Written Warning step—the last stage before termination—and was timed to coincide with the first day of Ms. Moore's protected leave. Ms. Moore's former manager communicated with her via text message on August 21, 2025 in a manner inconsistent with the issuance of a Final Written Warning that same day, supporting that the escalation was pretextual.

**D.      STD Denial and Maternity Leave**

24.      Matrix denied Ms. Moore's STD claim for August 14 through September 6, 2025, asserting medical documentation did not support her being out of work prior to delivery.

25.      This denial was unreasonable. Ms. Moore delivered her son on September 7, 2025—eleven days before her due date—which is evidence of complications during the denied period.

26.      Matrix approved STD for September 7 through October 18, 2025 (six weeks at 60% pay). Ms. Moore then received four weeks of paid parental leave through approximately November 12, 2025.

27.      ADT's FMLA accounting improperly included periods during which Ms. Moore was actively working, resulting in artificially accelerated exhaustion of her twelve-week entitlement. While Ms. Moore was on protected leave and locked out of ADT's internal systems, ADT sent her an email dated September 26, 2025 stating that ADT had not received documentation indicating her absences were related to limitations associated with her pregnancy and instructing her that if she wished ADT to consider those absences "for coverage under the Pregnant Workers Fairness Act," she was required to submit medical documentation "no later than October 7, 2025." The September 26 email further warned that absences not supported by documentation by the stated deadline would "remain classified as unexcused." ADT sent this five-day demand to an employee who was on approved medical leave following the September 7, 2025 birth of her son and who was, by ADT's own policy, not authorized to access ADT internal networks or platforms while on leave. The September 26 email is significant in two respects: (a) ADT's own communication acknowledged on its face that the PWFA was potentially applicable to Ms. Moore's absences—foreclosing any later claim of ignorance of

7

PWFA obligations—and (b) ADT imposed an impossible-compliance deadline on a postpartum employee who had no permitted means to access ADT's systems or to submit documentation through them, then used the resulting failure to comply as a basis for continuing to classify protected absences as "unexcused."

**E.      Return to Work and Continued Retaliation**

28.      Ms. Moore returned to work on or about November 17, 2025. She was locked out of ADT's systems on November 15–16 and was not compensated.

29.      ADT reassigned Ms. Moore to Supervisor Helize Vivier without legitimate business justification.

30.      ADT refused to provide training on the PEARS program conducted during Ms. Moore's leave, despite repeated requests.

31.      Supervisor Vivier subjected Ms. Moore to heightened scrutiny including timing her bathroom breaks and requiring make-up time—not applied to similarly situated employees outside her protected classes.

**F.      Postpartum Complications and Second Leave**

32.      Ms. Moore experienced postpartum depression and postpartum anxiety following the birth of her son. On December 2, 2025, Ms. Moore telephoned Matrix to file a new short-term disability claim. During the intake call, Ms. Moore reported postpartum depression and postpartum anxiety, identified her treating providers, provided a contemplated return-to-work date of February 2, 2026, and was assigned intake number 7810150. The Matrix intake representative affirmatively advised Ms. Moore that she should take the leave, stating words to the effect of: "we do recommend that you do take it, especially if it is recommended by the doctor for you to be off. We do recommend that you take your leave and just notify your

manager and your supervisor that you do not plan on returning to work going forward until February 2." Ms. Moore expressly raised her concern based on her prior experience with Matrix—that during her August 2025 pregnancy leave, Matrix had directed her to begin leave on August 21, 2025 and then denied the resulting STD claim, leaving her unpaid for approximately three weeks until she delivered her son on September 7, 2025. Ms. Moore asked the Matrix representative directly whether she should continue working until the new claim was approved. The Matrix representative did not advise her to continue working pending approval, did not warn her that the claim might be denied, and instead deflected the question to a future claims examiner. Ms. Moore took leave in direct reliance on Matrix's affirmative directive to do so.

33. Ms. Moore's benefits records were altered without her knowledge or consent: STD usage changed from 35 to 56 days used; accommodation balance changed from 0 to 28 days used.

## G. Protected Activity

34. On December 15, 2025, undersigned counsel sent ADT's in-house legal department a demand letter identifying FMLA, PDA, PWFA, and § 1981 violations. The letter was acknowledged by Casey Henderson, ADT Assistant General Counsel, Labor & Employment, who personally handled the matter prior to ADT's retention of outside counsel.

35. On December 23, 2025, Ms. Moore filed EEOC Charge No. 415-2026-00551.

36. On the same date, ADT's internal records placed Ms. Moore on "unpaid LOA-ADA" effective December 23, 2025. Internal communications between Breanna Brown and Shawn Wooten confirm: Brown asked "Should I submit to place her out effective 12/23 for unpaid LOA-ADA?" and Wooten responded, "Yes, please use the 12/23 effective date."

## H. The Wrongful Termination

9

37. On January 8, 2026, Matrix denied Ms. Moore's second STD claim. At the time of denial, Ms. Moore's Matrix benefits portal showed 152 days of STD benefits available. Matrix assigned Dr. Sharon Yoon, an internist, to review a claim for postpartum depression— overriding the clinical judgment of Ms. Moore's licensed mental health provider, Mariangela Falcon, LMSW, who had diagnosed Ms. Moore with Major Depressive Disorder and Generalized Anxiety Disorder and certified her inability to work through April 8, 2026. Under the Plan's own definition of "Certified Physician" for mental health conditions, a licensed clinical social worker satisfies the certification requirement. Matrix issued the denial on February 9, 2026—three days before the February 12 deadline Matrix itself had given Ms. Moore to submit additional evidence—and characterized it as her "one and only appeal." Upon information and belief, the denial was made "upon review and discussion with the Plan Administrator," meaning ADT directed or influenced the denial decision. Upon further information and belief, Matrix case manager Breanna Brown—the same individual who on December 23, 2025 confirmed Ms. Moore's leave with ADT supervisor Shawn Wooten— subsequently misrepresented to Ms. Moore by telephone that she could not see Ms. Moore's leave status in the system.

38. On January 12, 2026, Supervisor Helize Vivier (whose ADT title is "Mgr Team.Retention ACT") sent Ms. Moore an email titled "Attendance update." In that email, Vivier wrote: "I am writing to address your attendance issues over the past several weeks. As you know, your attendance since December 2025 has been very sporadic. You have not worked a full day since December 16, but have been putting in a few hours here and there at your own choosing, and without any warning or notice to me or the attendance team. You're not meeting your performance goals either. We have been giving you leeway because of your pending

accommodation request with Matrix, but we have just learned that that request was denied. As such, your absences are a violation of the attendance policy and the next step is termination. Please contact me by close of business Thursday 1/15 to discuss this further or we will proceed with your termination at that time." The email is significant in three respects: (a) Vivier expressly admitted ADT's knowledge of Ms. Moore's pending accommodation request with Matrix; (b) Vivier mischaracterized Ms. Moore's protected absences as her "putting in a few hours here and there at your own choosing"; and (c) Vivier's claim that the accommodation request had been "denied" was false or, at minimum, misleading—as set forth in the following paragraphs.

39.     Vivier's January 12 statement that the accommodation request had been "denied" was false or misleading. In fact, Reliance Matrix—ADT's designated agent for accommodation administration—had assigned Ms. Moore's accommodation request reference number A-2025-267198 and had affirmatively initiated the interactive process. Karen Heister, identifying herself as "a Workforce Accommodations Specialist with Reliance Matrix, partnering with you on behalf of ADT LLC," notified Ms. Moore in writing: "Reliance Matrix administers requests for reasonable work accommodations, and we are initiating the interactive process to assist with your request." That interactive process was never completed. ADT and its designated agents either failed to engage in any meaningful dialogue with Ms. Moore about possible accommodations, or summarily denied the request without engaging in the individualized interactive process required by the ADA and the PWFA. On January 14, 2026—two days after Vivier's threat—ADT's own HR department confirmed to Ms. Moore that she remained on approved leave effective December 23, 2025, directly contradicting Vivier's January 12 representation.

40. On January 28, 2026, Ms. Moore formally appealed Matrix's denial.

41. On January 29, 2026, at approximately 11:49 AM, Allison Reynolds—an ADT Senior Unit Manager—called Ms. Moore from personal cell phone (541) 350-3127. The call lasted forty-one (41) seconds. Ms. Reynolds stated words to the effect of "HR is terminating" Ms. Moore.

42. When Ms. Moore stated she was on approved leave, Reynolds replied that she was "just repeating what I was told," laughed, and hung up.

43. On the same day, Matrix informed Ms. Moore her STD appeal would be approved within two business days. ADT terminated her the very day her appeal was about to be granted.

44. Ms. Moore confirmed termination via ADT's attendance line.

45. ADT provided no written termination notice, COBRA election notice, 401(k) rollover information, or Georgia DOL Separation Notice (Form DOL-800).

46. Ms. Moore's final paycheck, dated January 9, 2026 and covering pay period December 21, 2025 through January 3, 2026, reflected gross earnings of $27.07 and net pay of $0.00. The $27.07 in gross was not for hours worked; it was coded in its entirety as "BBAebravoaward," an ADT recognition bonus, with no regular wages, no overtime, no PTO, and no holiday pay reflected on the statement. A separate deduction of $25.00, also coded "BBAebravoaward," appeared on the same paystub, which—together with $1.68 in Social Security tax and $0.39 in Medicare tax—reduced Ms. Moore's net pay to $0.00. Ms. Moore received no actual wages on her final paycheck.

47. As a direct and proximate result of ADT's failure to pay wages owed, denial of disability benefits, and wrongful termination, Ms. Moore lost her home. The cumulative financial devastation—months of unpaid wages, improperly denied STD benefits, and sudden termination

12

with no notice or severance—left Ms. Moore unable to maintain her housing, resulting in the displacement of Ms. Moore and her infant son.

## I.    Unpaid Wages

48.    ADT failed to pay wages due for multiple periods including:

    a.    March 3–7, 2025: Equipment failures; PTO deducted without consent;

    b.    May 1–12, 2025: Equipment failures; not paid;

    c.    August 21–September 6, 2025: Medically supported leave; denied STD;

    d.    November 15–16, 2025: System lockout; not paid; and

    e.    December 2025–January 2026: Approved ADA leave; minimal compensation.

## J.    Retaliatory Timeline

49.    The timeline demonstrates clear retaliation:

    a.    March 2025: Pregnancy disclosed → Heightened scrutiny;

    b.    August 21, 2025: Leave begins → Same-day Final Written Warning;

    c.    December 15, 2025: Demand letter → "Unexcused absences" during leave;

    d.    December 23, 2025: EEOC charge → Termination process begins; and

    e.    January 29, 2026: Appeal about to be granted → 41-second termination.

50.    On January 28, 2026, Plaintiff's counsel Amber Montgomery cooperated with a procedural motion in her own separate federal employment matter, *Montgomery v. Microsoft Corporation*, No. 2:26-cv-00443-RAJ (W.D. Wash.), in which Microsoft is represented by Ogletree, Deakins, Nash, Smoak & Stewart, P.C. On January 29, 2026—the very next day— ADT terminated Ms. Moore via the 41-second telephone call described above. On January 30, 2026—the day after that—Ogletree attorney Patrick F. Clark, office managing shareholder of Ogletree's Atlanta office, contacted Plaintiff's counsel in the *Montgomery* matter proposing

settlement discussions. Upon information and belief, the timing of Ms. Moore's termination was not coincidental. Reynolds, the ADT supervisor who executed the termination call, stated during that call that she was "doing what she was advised to do" or words to similar effect, supporting the inference that the termination decision was directed by, or influenced by, advice from outside counsel. On March 27, 2026, Ogletree attorney Deepa N. Subramanian, working from the same Atlanta office as Clark and under Clark's supervision as office managing shareholder, filed a Partial Motion to Dismiss in this action on behalf of both ADT and Matrix jointly. ADT and Matrix have potentially adverse interests in this litigation: Plaintiff alleges that Matrix took direction from ADT in denying her disability claims rather than exercising independent medical judgment, and that Matrix timed its appeal approval for the same day ADT terminated Plaintiff, after months of delay. If those allegations are established, ADT will have an interest in attributing improper claim denials to Matrix's independent decision-making, while Matrix will have an interest in establishing that it was following ADT's instructions. Those positions are directly adverse. Plaintiff reserves the right to seek discovery into outside counsel's involvement in the termination decision and the scope of Ogletree's concurrent representations.

### K.     Comparator Treatment

51.     Upon information and belief, ADT treated similarly situated non-pregnant, non-African American employees more favorably. Discovery will reveal comparators.

### L.     Second EEOC Charge and Right-to-Sue Notices

52.     On February 28, 2026, Plaintiff filed a second EEOC Charge, No. 415-2026-01409, alleging that ADT's January 29, 2026 termination was retaliatory and discriminatory in violation of Title VII, the PWFA, the ADA, and other federal anti-discrimination statutes.

53.     On April 7, 2026, the EEOC issued Notices of Right to Sue on EEOC Charge No. 415-2026-00551 and on EEOC Charge No. 415-2026-01409. Plaintiff and undersigned counsel received the Notices on or about that date. This First Amended Complaint is timely filed within 90 days of receipt and asserts all claims encompassed by both charges. Defendants' discriminatory and retaliatory conduct was continuing and ongoing at least through February 26, 2026, including the termination itself, the post-termination denial of STD benefits on appeal, the failure to provide separation documentation, and ongoing wage withholding.

## M.     Lactation and Pumping Accommodations

54.     Following the birth of her son on September 7, 2025, Ms. Moore was a nursing mother and expressed breast milk by pumping. Ms. Moore continued to nurse and pump throughout her return to work on November 17, 2025 and through the date of her termination on January 29, 2026—the entire period falling within one year of the birth of her child.

55.     ADT failed to provide Ms. Moore with the reasonable break time required by 29 U.S.C. § 218d (the "PUMP for Nursing Mothers Act" or "PUMP Act") each time she had need to express breast milk; failed to ensure she could take such breaks free from intrusion or coercion in her remote work environment; subjected her bathroom and pumping breaks to heightened scrutiny and timing under Supervisor Vivier; and treated lactation-related time away from her workstation as compensable against her attendance record. ADT further failed to comply with O.C.G.A. § 34-1-6, which requires Georgia employers to provide reasonable paid break time for both exempt and non-exempt employees to express breast milk for a nursing child.

## IV.    CLAIMS FOR RELIEF

## COUNT I

## FMLA Interference – 29 U.S.C. § 2615(a)(1)

## (Against ADT and Matrix)

56.    Plaintiff re-alleges and incorporates all preceding paragraphs.

57.    ADT was an "employer" and Ms. Moore an "eligible employee" under the FMLA. Matrix, as ADT's designated agent for FMLA administration, is jointly liable for FMLA violations arising from its administration of Plaintiff's leave. Matrix did not function merely as a clerical claims processor for ADT. Matrix exercised substantive discretionary authority over Ms. Moore's FMLA-protected leave by, among other things: (a) affirmatively directing Ms. Moore to take leave during the December 2, 2025 intake call described above and instructing her how to communicate the leave decision to her ADT supervisors; (b) independently making eligibility determinations and communicating denial decisions directly to Ms. Moore in writing; (c) administering Ms. Moore's accommodation request through Reliance Matrix Workforce Accommodations Specialist Karen Heister, who notified Ms. Moore in writing that Reliance Matrix was "initiating the interactive process" and assigned the request reference number A-2025-267198; (d) coordinating directly with ADT supervisors—including the December 23, 2025 Brown-to-Wooten exchange in which Matrix case manager Breanna Brown asked Shawn Wooten whether to place Ms. Moore on "unpaid LOA-ADA" effective December 23, 2025—such that Matrix's recommendations were routinely adopted by ADT without independent review; and (e) timing the appeal denial and approval communications in coordination with ADT's termination decision. Matrix's exercise of these discretionary functions establishes that

16

Matrix acted, directly or indirectly, in the interest of ADT in relation to Ms. Moore within the meaning of 29 U.S.C. § 2611(4)(A)(ii)(I) and 29 C.F.R. § 825.104(d).

58.     Ms. Moore was entitled to twelve weeks of FMLA leave. 29 U.S.C. § 2612(a)(1).

59.     ADT interfered with Ms. Moore's FMLA rights by: (a) coding FMLA-protected absences as "unscheduled absences" and using them for disciplinary points; (b) issuing a Final Written Warning on the first day of leave based on protected absences; (c) improperly calculating FMLA entitlement to accelerate exhaustion; (d) failing to properly designate qualifying absences as FMLA leave; (e) denying reinstatement by locking her out of systems; and (f) terminating her employment in connection with her exercise of FMLA rights.

60.     ADT bears the burden of proving, as an affirmative defense, that Ms. Moore would have been discharged for reasons wholly unrelated to her FMLA leave. ADT cannot meet this burden.

61.     Ms. Moore suffered lost wages, lost benefits, liquidated damages, and emotional distress.

## COUNT II

### FMLA Retaliation – 29 U.S.C. § 2615(a)(1)–(2)

### (Against ADT)

62.     Plaintiff re-alleges and incorporates all preceding paragraphs.

63.     Ms. Moore exercised FMLA rights by taking approved pregnancy leave, maternity leave, and requesting postpartum leave.

64.     ADT subjected her to adverse actions: Final Written Warning on day one of leave, heightened scrutiny, denial of training, benefits manipulation, and termination.

65. The causal connection is established by temporal proximity: discipline on the first day of leave; termination while on approved leave. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001).

66. Ms. Moore's FMLA leave was the but-for cause of the adverse employment actions. ADT cannot demonstrate that it would have terminated Ms. Moore for reasons wholly unrelated to her exercise of FMLA rights.

67. Ms. Moore suffered lost wages, lost benefits, liquidated damages, and emotional distress.

## COUNT III

## Race Discrimination – 42 U.S.C. § 1981

## (Against ADT)

68. Plaintiff re-alleges and incorporates all preceding paragraphs.

69. Ms. Moore is African American and a member of a protected class under § 1981.

70. Section 1981 guarantees all persons the same right to make and enforce contracts as white citizens. 42 U.S.C. § 1981(a)–(b).

71. ADT discriminated by: (a) disparate scrutiny not applied to white employees; (b) escalated discipline without justification; (c) denied benefits and leave entitlements; (d) manipulated benefits records; (e) denied training upon return from leave; and (f) terminating her under circumstances that would not have occurred had she been white.

72. Ms. Moore's treatment reflects intersectional discrimination as an African American woman. *See Jefferies v. Harris Cty. Cmty. Action Ass'n*, 615 F.2d 1025 (5th Cir. 1980).

18

73.     ADT's conduct was willful and intentional, entitling Ms. Moore to compensatory and punitive damages without the caps imposed by Title VII. *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454 (1975).

## COUNT IV

### Retaliation – 42 U.S.C. § 1981

### (Against ADT)

74.     Plaintiff re-alleges and incorporates all preceding paragraphs.

75.     Ms. Moore engaged in protected activity: opposing discrimination, filing EEOC Charge on December 23, 2025, and retaining counsel who communicated claims on December 15, 2025.

76.     ADT retaliated by terminating her on January 29, 2026—thirty-seven days after the EEOC charge. The but-for causal connection is established by temporal proximity and the absence of any legitimate intervening basis.

77.     ADT's conduct was willful, entitling Ms. Moore to uncapped compensatory and punitive damages. *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454 (1975).

## COUNT V

### Failure to Pay Wages – FLSA, 29 U.S.C. § 201 et seq.

### (Against ADT)

78.     Plaintiff re-alleges and incorporates all preceding paragraphs.

79.     ADT was an employer engaged in commerce within the meaning of the FLSA, and Ms. Moore was a non-exempt employee.

19

80.    ADT willfully failed to pay wages due for multiple periods and improperly deducted PTO for company-caused equipment failures without consent.

81.    ADT's failure was willful under 29 U.S.C. § 255(a), entitling Plaintiff to a three-year statute of limitations and liquidated damages. 29 U.S.C. § 216(b).

## COUNT VI

### Failure to Pay Wages – Georgia Law

### (Against ADT)

82.    Plaintiff re-alleges and incorporates all preceding paragraphs.

83.    ADT failed to pay all wages due upon termination and failed to provide a Georgia DOL Separation Notice (Form DOL-800).

## COUNT VII

### Wrongful Termination in Violation of Public Policy

### Georgia Common Law – (Against ADT)

84.    Plaintiff re-alleges and incorporates all preceding paragraphs.

85.    ADT terminated Ms. Moore while on approved ADA leave, while her STD appeal was pending and about to be approved, and in retaliation for her exercise of rights under the FMLA, Title VII, the PWFA, and other federal statutes.

86.    The termination violated the clear public policy of Georgia and the United States as expressed in the FMLA, Title VII, the ADA, the PWFA, and other anti-discrimination statutes.

87.    The termination was effectuated via a forty-one-second phone call from a personal cell phone, with no documentation, no explanation, no opportunity to respond, and no required separation paperwork.

88.    Ms. Moore suffered lost wages, lost benefits, emotional distress, humiliation, mental anguish, and other compensable harm, including the loss of her home and displacement of herself and her infant son.

## COUNT VIII

### Breach of Contract – Short-Term Disability Plan

### (Against Matrix)

89.    Plaintiff re-alleges and incorporates all preceding paragraphs.

90.    ADT's STD Policy disclaims ERISA coverage and characterizes itself as a "payroll practice" under 29 C.F.R. § 2510.3-1(b). The STD Policy creates contractual obligations between ADT, Matrix as plan administrator, and eligible employees including Ms. Moore. In the alternative, and pleaded in accordance with Federal Rule of Civil Procedure 8(d)(2), if the STD Plan is determined to be governed by ERISA despite ADT's disclaimer—whether under the functional analysis of *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982) (en banc), based on the existence of an ongoing administrative scheme administered by Matrix with discretionary authority, or otherwise—Plaintiff asserts a parallel claim under ERISA § 502(a)(1)(B) for recovery of benefits due under the terms of the plan, and under ERISA § 502(a)(3) for equitable relief for breach of fiduciary duty by Matrix as functional fiduciary.

91.    Matrix breached the STD Plan by: (a) unreasonably denying Ms. Moore's initial STD claim for August 14 through September 6, 2025, despite medical documentation of pregnancy complications and her premature delivery eleven days later; (b) assigning an internist

to override a licensed mental health provider's clinical judgment on a postpartum depression claim; (c) issuing a denial three days before the deadline it gave Ms. Moore to submit additional evidence; (d) characterizing its premature decision as her "one and only appeal"; and (e) acting upon ADT's direction in denying claims rather than exercising independent medical judgment.

92.     As a direct result, Ms. Moore was deprived of disability benefits to which she was contractually entitled, contributing to financial devastation including the loss of her home.

## COUNT IX

### Bad Faith Denial of Benefits – Georgia Law

### (Against Matrix)

93.     Plaintiff re-alleges and incorporates all preceding paragraphs.

94.     Because ADT's STD Plan is characterized by ADT as a "payroll practice" not governed by ERISA pursuant to 29 C.F.R. § 2510.3-1(b), Matrix's administration of the plan is subject to Georgia's common law duty of good faith and fair dealing and the statutory bad faith provisions of O.C.G.A. § 33-4-6. In the alternative, and pleaded pursuant to Federal Rule of Civil Procedure 8(d)(2), if the STD Plan is determined to be governed by ERISA despite ADT's disclaimer, the conduct described herein constitutes a breach of fiduciary duty by Matrix as a functional fiduciary under ERISA, actionable under ERISA § 502(a)(3).

95.     On December 30, 2025, Plaintiff's counsel made a written demand upon Matrix for payment of all STD benefits owed, including reversal of the denied pre-delivery claim and payment of extended STD benefits. More than sixty days have elapsed since that demand, satisfying the prerequisite of O.C.G.A. § 33-4-6.

96.     Matrix acted in bad faith by: (a) denying the initial STD claim despite clear medical evidence of pregnancy complications; (b) altering Ms. Moore's benefits records without

22

her knowledge or consent; (c) denying the postpartum depression claim based on an unqualified reviewer's assessment; (d) issuing a denial before the evidentiary deadline had passed; (e) taking direction from ADT—the plan sponsor with an adverse interest in Ms. Moore's claims—rather than conducting an independent review; (f) timing the appeal approval for the same day ADT terminated Ms. Moore, after months of delay; and (g) on December 2, 2025, affirmatively directing Ms. Moore to take leave from her employment, instructing her how to communicate the leave to her supervisor, and assuring her that the claim would be processed by a claims examiner—all while Ms. Moore expressly raised her concern that Matrix had previously directed her to take leave only to deny the claim and leave her unpaid—and then denying the resulting claim, leaving Ms. Moore both terminated by ADT for the very absence Matrix directed and unpaid by Matrix for the leave Matrix itself had instructed her to take.

97.    Matrix's bad faith caused Ms. Moore to suffer financial hardship, emotional distress, and the loss of her home, entitling her to compensatory damages, statutory penalties under O.C.G.A. § 33-4-6 not to exceed fifty percent of the liability, plus reasonable attorney's fees.

## COUNT X

### Negligent Administration of Benefits

### (Against Matrix)

98.    Plaintiff re-alleges and incorporates all preceding paragraphs.

99.    As the designated third-party administrator of ADT's STD Plan, FMLA leave, and ADA accommodations, Matrix owed Ms. Moore a duty of reasonable care in administering her benefits. In the alternative, and pleaded pursuant to Federal Rule of Civil Procedure 8(d)(2), if the STD Plan is determined to be governed by ERISA despite ADT's disclaimer, Matrix's

exercise of discretionary authority over claims administration establishes functional fiduciary status, and the conduct described herein constitutes a breach of fiduciary duty actionable under ERISA § 502(a)(3).

100.   Matrix breached that duty by: (a) failing to properly process and approve STD claims supported by adequate medical documentation; (b) altering benefits records without authorization, creating false records of STD and accommodation usage; (c) failing to coordinate with ADT regarding Ms. Moore's leave status, resulting in conflicting information about whether she was on approved leave; (d) unreasonably delaying the processing of her STD appeal; and (e) failing to maintain accurate records of Ms. Moore's benefits entitlements.

101.   As a direct and proximate result, Ms. Moore suffered lost benefits, financial harm, emotional distress, and the loss of her home.

## COUNT XI

## Race Discrimination – Title VII of the Civil Rights Act of 1964

## 42 U.S.C. § 2000e et seq.

## (Against ADT)

102.   Plaintiff re-alleges and incorporates all preceding paragraphs.

103.   Ms. Moore is African American and a member of a class protected by Title VII.

104.   ADT subjected Ms. Moore to discriminatory terms, conditions, and privileges of employment because of her race, including disparate scrutiny, escalated discipline, manipulation of benefits and leave records, denial of training, and termination.

105.   Ms. Moore satisfies the prima facie elements under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973): she is a member of a protected class; she was qualified for her

position and performing satisfactorily prior to her pregnancy disclosure; she suffered a series of adverse employment actions culminating in termination; and similarly situated non-African American employees were treated more favorably.

106.    Any reason ADT proffers for its actions is pretext for race discrimination, evidenced by ADT's departures from its own Equal Opportunity policy, its failure of consistency in disciplinary application, its refusal to follow its own progressive discipline framework, and the manner of termination via a 41-second call from a personal cell phone with no documentation.

107.    ADT's conduct was intentional, willful, and undertaken with malice or reckless indifference to Ms. Moore's federally protected rights, entitling her to compensatory and punitive damages under 42 U.S.C. § 1981a, in addition to back pay, front pay, and equitable relief.

## COUNT XII

**Sex Discrimination Including Pregnancy, Childbirth, and Related Medical Conditions**

**Title VII as amended by the Pregnancy Discrimination Act – 42 U.S.C. §§ 2000e(k), 2000e-2**

**(Against ADT)**

108.    Plaintiff re-alleges and incorporates all preceding paragraphs.

109.    The Pregnancy Discrimination Act amends Title VII to prohibit discrimination on the basis of pregnancy, childbirth, or related medical conditions, and requires that women affected by pregnancy be treated the same for all employment-related purposes as other persons not so affected but similar in their ability or inability to work. 42 U.S.C. § 2000e(k).

25

110.    ADT discriminated against Ms. Moore on the basis of sex, pregnancy, childbirth, and related medical conditions by: (a) initiating heightened scrutiny of her work and breaks immediately upon her pregnancy disclosure; (b) refusing to provide a schedule modification consistent with her healthcare provider's recommendation; (c) issuing a Final Written Warning on the first day of her pregnancy-related medical leave; (d) accumulating attendance points against her for absences during pregnancy and postpartum leave; (e) refusing post-leave training; (f) falsely threatening termination during her postpartum medical leave; (g) terminating her employment while she remained on approved leave for postpartum depression; and (h) taking adverse action against Ms. Moore based on her status as a lactating and nursing mother during her return-to-work period from November 17, 2025 through her discharge on January 29, 2026, including subjecting her bathroom and break activity to heightened scrutiny and surveillance, using protected pumping-related time as a basis for disciplinary attendance tracking, and discharging her while she remained within the one-year postpartum lactation period and was actively nursing her son. Lactation is a medical condition related to and arising from pregnancy and childbirth, and adverse action based on a woman's lactation status is sex discrimination prohibited by the PDA.

111.    Similarly situated non-pregnant employees and employees not affected by pregnancy or childbirth were not subjected to such treatment.

112.    ADT's actions were intentional, willful, and undertaken with malice or reckless indifference to Ms. Moore's federally protected rights.

26

## COUNT XIII

### Retaliation – Title VII, 42 U.S.C. § 2000e-3(a)

### (Against ADT)

113.   Plaintiff re-alleges and incorporates all preceding paragraphs.

114.   Ms. Moore engaged in protected activity within the meaning of 42 U.S.C. § 2000e-3(a) by, among other things: (a) opposing discrimination through her counsel's December 15, 2025 demand letter; (b) filing EEOC Charge No. 415-2026-00551 on December 23, 2025; and (c) participating in EEOC processes thereafter.

115.   ADT was aware of Ms. Moore's protected activity. Within hours of receiving the December 15, 2025 demand letter, ADT's Assistant General Counsel acknowledged it. ADT placed Ms. Moore on "unpaid LOA-ADA" effective the same day she filed her EEOC Charge.

116.   ADT subjected Ms. Moore to materially adverse actions reasonably likely to dissuade a worker from making or supporting a charge of discrimination, including but not limited to recoding her leave status, denying STD benefits, and terminating her employment on January 29, 2026—thirty-seven days after she filed her EEOC Charge and one day after she cooperated in unrelated litigation against ADT's outside counsel.

117.   But for Ms. Moore's protected activity, ADT would not have taken these adverse actions. The temporal proximity, the deviation from ADT's own progressive discipline procedures, and the absence of any legitimate intervening basis establish causation. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013).

118.   ADT's retaliation was intentional, willful, and undertaken with malice or reckless indifference to Ms. Moore's federally protected rights.

COUNT XIV

Failure to Accommodate – Pregnant Workers Fairness Act

42 U.S.C. § 2000gg et seq.

(Against ADT)

119.    Plaintiff re-alleges and incorporates all preceding paragraphs.

120.    The PWFA requires covered employers to provide reasonable accommodations to the known limitations related to pregnancy, childbirth, or related medical conditions of a qualified employee, absent undue hardship. 42 U.S.C. § 2000gg-1(1).

121.    Ms. Moore had known limitations related to her pregnancy, including pregnancy-related nausea, fatigue, and the need for medication, and known limitations related to postpartum depression following the birth of her son on September 7, 2025.

122.    Ms. Moore requested reasonable accommodations including a schedule modification to daytime hours supported by a healthcare provider note dated April 9, 2025, and protected leave for prenatal care and postpartum recovery.

123.    ADT failed to provide reasonable accommodations: ADT offered a counterproposal that required weekend work and was inconsistent with the medical recommendation; failed to engage in a good-faith interactive process; accumulated attendance points against Ms. Moore for pregnancy-related absences; refused to treat her postpartum depression-related absences as protected; and forced Ms. Moore onto unpaid leave—coding her status as "unpaid LOA-ADA" effective December 23, 2025 through the internal Brown-to-Wooten exchange—rather than providing alternative workplace accommodations she could have used while continuing to work and earn wages. Under the PWFA, an employer may not force a qualified employee to take leave if another reasonable accommodation can be provided that

would allow the employee to continue working, and may not impose an accommodation on an employee that has not been arrived at through the interactive process. ADT did both.

124.    ADT cannot establish that any requested accommodation would have imposed an undue hardship.

125.    ADT's violations of the PWFA were intentional, willful, and undertaken with malice or reckless indifference to Ms. Moore's federally protected rights.

## COUNT XV

### Retaliation and Coercion – PWFA, 42 U.S.C. § 2000gg-2(f)

### (Against ADT)

126.    Plaintiff re-alleges and incorporates all preceding paragraphs.

127.    The PWFA prohibits retaliation, interference, coercion, intimidation, or threats against any individual because she has exercised or enjoyed rights under the statute or because she has opposed any practice made unlawful by the statute. 42 U.S.C. § 2000gg-2(f).

128.    Ms. Moore exercised PWFA rights by requesting accommodations for pregnancy and pregnancy-related conditions and by opposing ADT's denial of those accommodations through her counsel's December 15, 2025 demand letter and her December 23, 2025 EEOC Charge.

129.    ADT retaliated by, among other things, issuing a Final Written Warning on the first day of pregnancy-related leave, recoding her leave to her detriment, denying training, falsely threatening termination during postpartum leave, and terminating her employment on January 29, 2026.

130.    ADT's retaliation was intentional, willful, and undertaken with malice or reckless indifference to Ms. Moore's federally protected rights.

29

## COUNT XVI

## Discrimination and Failure to Accommodate – Americans with Disabilities Act

## 42 U.S.C. §§ 12112, 12203

## (Against ADT)

131.    Plaintiff re-alleges and incorporates all preceding paragraphs.

132.    Ms. Moore is a qualified individual with a disability within the meaning of the ADA, as amended by the ADAAA. Her postpartum depression substantially limits one or more major life activities, including but not limited to sleeping, concentrating, thinking, and the operation of major bodily functions including neurological and brain function. 42 U.S.C. § 12102(2). In the alternative, ADT regarded her as having such an impairment. 42 U.S.C. § 12102(3).

133.    Ms. Moore was qualified to perform the essential functions of her position, with or without reasonable accommodation, as evidenced by her promotion, performance history, and ADT HR's confirmation that she was on approved ADA leave.

134.    ADT discriminated against Ms. Moore in violation of 42 U.S.C. § 12112 by, among other things: (a) failing to engage in a good-faith interactive process; (b) failing to provide a reasonable accommodation in the form of leave or other adjustments for her postpartum depression; (c) falsely threatening termination on January 12, 2026 by claiming the accommodation request was denied when in fact she remained on approved ADA leave; (d) denying training and access to systems; and (e) terminating her employment on January 29, 2026 while she was on approved ADA leave.

135.    ADT cannot establish that any reasonable accommodation Ms. Moore requested would have imposed an undue hardship.

136.    ADT's violations of the ADA were intentional, willful, and undertaken with malice or reckless indifference to Ms. Moore's federally protected rights, entitling her to compensatory and punitive damages under 42 U.S.C. § 1981a.

## COUNT XVII

## Retaliation – ADA, 42 U.S.C. § 12203

## (Against ADT)

137.    Plaintiff re-alleges and incorporates all preceding paragraphs.

138.    Ms. Moore engaged in protected activity under the ADA by requesting reasonable accommodations for her pregnancy-related conditions and postpartum depression, opposing ADT's failure to accommodate, and filing an EEOC Charge that included disability discrimination.

139.    ADT was aware of her protected activity and took materially adverse action by recoding her leave status, denying STD and other benefits, falsely threatening termination, and terminating her employment.

140.    But for Ms. Moore's protected activity under the ADA, ADT would not have taken these adverse actions.

141.    ADT's retaliation was intentional, willful, and undertaken with malice or reckless indifference to Ms. Moore's federally protected rights.

31

## COUNT XVIII

### Failure to Provide Lactation Accommodations

### PUMP for Nursing Mothers Act, 29 U.S.C. §§ 207(r), 218d, and

### O.C.G.A. § 34-1-6

### (Against ADT)

142.    Plaintiff re-alleges and incorporates all preceding paragraphs.

143.    The PUMP for Nursing Mothers Act amended the Fair Labor Standards Act to require employers to provide a covered employee reasonable break time to express breast milk for the employee's nursing child for one year after the child's birth each time the employee has need to express milk, and to provide a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by the employee to express breast milk. 29 U.S.C. §§ 207(r), 218d.

144.    At all times relevant to this claim, Ms. Moore was a covered employee within the meaning of the PUMP Act and the FLSA. ADT was a covered employer, employing more than fifty employees and not entitled to the small-employer undue hardship exemption set forth in 29 U.S.C. § 218d(c). Ms. Moore was within one year of the birth of her son, who was born September 7, 2025, throughout her return-to-work period from November 17, 2025 through her discharge on January 29, 2026, and Ms. Moore was nursing and expressing breast milk by pumping during that entire period.

145.    First Violation Theory – 29 U.S.C. § 207(r) Break Time and Space. ADT violated 29 U.S.C. § 207(r) by failing to provide Ms. Moore with reasonable break time to express breast milk each time she had need to do so; by failing to ensure that such breaks could be taken free

from intrusion from coworkers, supervisors, or the public; and by subjecting Ms. Moore's lactation-related time to heightened scrutiny, surveillance, and disciplinary attendance tracking, including but not limited to Supervisor Vivier's timing of bathroom and break activity. Upon information and belief, Ms. Moore was not fully relieved from duty during pumping breaks within the meaning of 29 U.S.C. § 218d(b), as she was expected to remain available for incoming customer service calls and other work-related communications during the brief windows in which she attempted to express milk. As a result, the time Ms. Moore spent attempting to express breast milk constitutes compensable working time under the FLSA for which she was not paid, and ADT's failure to compensate her for that time gives rise to recoverable unpaid minimum wages and overtime under 29 U.S.C. § 216(b).

146.    Second Violation Theory – 29 U.S.C. § 218d Retaliation and Discharge. Independent of and in addition to the foregoing, ADT violated 29 U.S.C. § 218d by discharging Ms. Moore on January 29, 2026, while she was still within one year of the birth of her child and while she was still nursing and pumping. Ms. Moore's need for and use of pumping breaks was a contributing factor in ADT's decision to terminate her employment. The discharge constitutes an adverse employment action prohibited by the PUMP Act and the FLSA. Pursuant to 29 U.S.C. § 218d(g)(2), the 10-day notice-and-cure provision of § 218d(g)(1) does not apply because (a) Ms. Moore was discharged in connection with her need for lactation accommodations and her opposition to ADT's failure to accommodate, and (b) ADT's conduct, including its termination of Ms. Moore via a 41-second telephone call without any documentation, signaled that ADT had no intent to comply with the PUMP Act's requirements. The retaliation/discharge theory entitles Ms. Moore to the broader remedies available under 29 U.S.C. § 216(b), including wages lost, an

additional equal amount as liquidated damages, equitable relief including reinstatement, and reasonable attorneys' fees and costs.

147.    Third Violation Theory – O.C.G.A. § 34-1-6. ADT separately violated O.C.G.A. § 34-1-6, which requires Georgia employers to provide reasonable paid break time for both exempt and non-exempt employees to express breast milk for a nursing child, and which prohibits employers from reducing an employee's compensation for time used to express breast milk. Pursuant to 29 U.S.C. § 218d(h), the PUMP Act does not preempt state laws providing greater protection to nursing employees, and Georgia's paid-break requirement applies to Ms. Moore independently of the federal framework. ADT's failure to provide paid lactation breaks under O.C.G.A. § 34-1-6, and its reduction of Ms. Moore's compensation through the disciplinary attendance tracking of her lactation-related time, gives rise to recoverable damages under Georgia law.

148.    ADT's violations under each of the foregoing theories were willful. ADT's failure to comply with the PUMP Act and with Georgia's lactation accommodation statute was a contributing factor in the cumulative discrimination, retaliation, and ultimately the discharge of Ms. Moore from her employment, and caused her lost wages, lost benefits, emotional distress, and other compensable harm.

## V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor against Defendants ADT and Matrix, jointly and severally where applicable, and award:

   a.   Back pay, front pay, and all lost wages and benefits;

b. All STD benefits wrongfully denied, including benefits for August 14 through September 6, 2025 and December 2, 2025 forward;

c. Liquidated damages under the FMLA and FLSA;

d. Compensatory damages for emotional distress, humiliation, mental anguish, and loss of housing, including damages under 42 U.S.C. § 1981a for violations of Title VII, the PWFA, and the ADA;

e. Punitive damages, including uncapped punitive damages under 42 U.S.C. § 1981 and punitive damages under 42 U.S.C. § 1981a;

f. Pre-judgment and post-judgment interest;

g. Attorneys' fees and costs pursuant to 29 U.S.C. §§ 2617(a)(3) and 216(b), 42 U.S.C. § 1988, 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 2000gg-2(a), and 42 U.S.C. § 12205;

h. Reinstatement or front pay in lieu thereof;

i. Declaratory and injunctive relief; and

j. Such other relief as this Court deems just and proper.

## VI.    DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: April 10, 2026

/s/ Amber Montgomery

Amber Montgomery, Esq.
Georgia Bar No. 265386
ALM Legal, LLC
299 Fontaine Rd SW
Mableton, GA 30126
Telephone: (912) 656-8895
Facsimile: (912) 800-9039
Email: amontgomery@alm-legal.com
*Attorney for Plaintiff Trinity A. Moore*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2026, I electronically filed the foregoing First Amended Complaint with the Clerk of Court using the CM/ECF system, which will automatically serve all counsel of record.


/s/ Amber Montgomery

Amber Montgomery, Esq.